# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# Marshall Division

| | | |
|---|---|---|
| DIGITAL VERIFICATION SYSTEMS, LLC, | § § § | |
| Plaintiff, | § § § | Civil Action No. 2:16-cv-00495-RWS-RSP |
| v. | § § | |
| ADOBE SYSTEMS INC., | § § | **Jury Trial Demanded** |
| Defendant. | § § § | |

# ADOBE SYSTEMS INC.'S MOTION TO TRANSFER VENUE

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND .......................................................................................... 3

    A.  Plaintiff Digital Verification, Its Recent Texas Incorporation and Its Non-Texas Principal .................................................................................................. 3

    B.  Witnesses and Documents Regarding Adobe's Accused Product Are Located in Northern California ................................................................................ 4

    C.  Third-Party Witnesses Reside in the Northern District of California .................... 5

III. ARGUMENT .................................................................................................................... 7

    A.  Plaintiff Could Have Filed This Case in the Northern District Of California ........ 7

    B.  The Private Interest Factors Weigh In Favor Of A Transfer .................................. 7

        1.  Access to Sources of Proof Favors the Northern District of California ..... 8

        2.  Availability of Compulsory Process Favors Transfer to the Northern District of California ............................................................................... 9

        3.  Cost of Attendance For Willing Witnesses Favors the Northern District of California ................................................................................ 10

        4.  All Other Concerns Weigh in Favor of Transfer ..................................... 12

    C.  The Public Interest Factors Weigh in Favor of a Transfer or Are Neutral ........... 12

        1.  Administrative Difficulties Flowing From Court Congestion Do Not Weigh Against Transfer ......................................................................... 13

        2.  Local Interest Favors The Northern District of California ...................... 13

        3.  Familiarity with patent law and avoiding potential conflicts of law are neutral factors ......................................................................................... 14

IV. CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adaptix Inc. v. Motorola Mobility LLC*,
   No. 6:12-cv-00016-MHS, Dkt. No. 124, at 13-14 (E.D. Tex. Mar. 28, 2013)
   (Schneider, J.) ...................................................................................................................11

*GeoTag, Inc. v. Aromatique, Inc. et al.*,
   No. 2:10-cv-0570, 2013 WL 8349856 (E.D. Tex. Jan. 14, 2013) .......................................9, 11

*Hoffman v. Blaski*,
   363 U.S. 335 (1960) ............................................................................................................11

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010) ..............................................................................................9

*In re Genentech*,
   566 F.3d 1388 (Fed. Cir. 2009) ........................................................................7, 8, 10, 12

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ............................................................................................12

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009) ........................................................................6, 8, 9, 12

*In re Volkswagen AG*,
   371 F.3d 201 (Fed. Cir. 2004) ............................................................................................6, 9

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ....................................................................................6, 11, 13

*Ingeniador v. Adobe Systems Incorporated*,
   No. 12-00805, 2014 WL 105106 (E.D. Tex. Jan. 10, 2014) ............................................6, 9, 10

*Internet Machs. LLC v. Alienware Corp.*,
   No. 10-cv-023, 2011 WL 2292961 (E.D. Tex. Jun 7, 2011) ...................................................10

*Nobel Biz, Inc. v. Five9, Inc.*,
   No. 6:12-cv-00243-MHS, Dkt. No. 52, at 10 (E.D. Tex. Mar. 28, 2013)
   (Schneider, J.) ...................................................................................................................11

*Orinda Intellectual Props. USA Holding Grp., Inc. v. Sony Corp.*,
   No. 2:08-cv-323, 2009 WL 3261932 (E.D. Tex. Sep. 29, 2009) .......................................12, 13

**STATUTES AND RULES**

28 U.S.C.
    § 1331 ............................................................................................................................ 6
    § 1338(a) ...................................................................................................................... 6
    § 1391(b) ...................................................................................................................... 6
    § 1404(a) ................................................................................................................. 1, 5

35 U.S.C. § 299 (2011) ................................................................................................... 11

Fed. R. Civ. P.
    45(c)(1)(A) ................................................................................................................... 9
    45(d)(3) ........................................................................................................................ 9

Defendant Adobe Systems Incorporated ("Adobe") respectfully moves this Court to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## I. INTRODUCTION

The Northern District of California is clearly the more convenient forum for this matter. The key transfer factors all favor the Northern District of California: the persons with knowledge who are likely witnesses are located in Northern California, which is Adobe's home; critical third-party witnesses can be compelled in the Northern District; the parties could access the relevant documentation from the Northern District; and the Northern District has a substantial local interest in adjudicating this dispute.

*First*, the accused product in this case—Adobe Sign (formerly EchoSign)—was developed in Northern California and the witnesses at Adobe knowledgeable about Adobe Sign reside in the Northern District of California and would incur a substantial burden traveling to this District for trial. Not a single witness directly or indirectly involved with the accused product resides within 100 miles of Marshall, Texas. Indeed, in the entire state of Texas, Adobe only has one employee who is involved with the accused product, working remotely from Dallas. *Second*, critical third-party fact witnesses reside in the Northern District of California, making the availability of compulsory process important. Plaintiff has accused technology that was on sale before the patent-in-suit's priority date, invalidating the patent. The persons with knowledge of these relevant facts are third-parties in Northern California, and therefore, the Northern District of California can compel the critical witnesses to testify at trial. *Third*, the source code and documents for Adobe Sign are located in the Northern District of California, as are the relevant documentation and custodians with knowledge relating to the finances, marketing, sales, and development of the accused product. *Fourth*, Adobe has had its headquarters in Northern

1

California since its founding in 1982, providing the Northern District of California with a meaningful local interest in adjudicating this dispute.

On the other hand, Plaintiff Digital Verification Systems, LLC ("Digital Verification") has no real ties to this District. Mr. Leigh M. Rothschild, the named inventor of the patent-in-suit and the only member of Plaintiff, is not a Texas resident, having admitted before a federal district court this year that he has been a Florida resident for the past 40 years. To manufacture ties to this District, Mr. Rothschild created Digital Verification *one week* before filing the instant case, using an address at a virtual office as his principal place of business. Indeed, in his haste to create a plaintiff for this case, Mr. Rothschild failed to transfer the patent-in-suit to Plaintiff prior to the filing the Complaint. Mr. Rothschild has filed patent infringement lawsuits against over a hundred defendants in 2015 alone through his twenty-two active LLCs, including fourteen active LLCs in the state of Florida. There appears to be no witnesses or evidence relevant to this case in the Eastern District of Texas from Plaintiff or otherwise.

As set forth more fully below, Adobe requests that this Court transfer this matter to the clearly more convenient Northern District of California under 28 U.S.C. § 1404(a), consistent with prior decisions of this Court where Adobe was a party. *See e.g.*, *Blue Spike, LLC v. Adobe Systems Incorporated et al.*, No. 12-cv-00564 (E.D. Tex. Mar. 13, 2014); *Ingeniador v. Adobe Systems Incorporated*, No. 12-cv-00805, 2014 WL 105106 (E.D. Tex. Jan. 10, 2014); *Digital Reg of Texas, LLC v. Adobe Systems Incorporated, et al.*, No. 11-cv-00305 (E.D. Tex. Mar. 28, 2012); *Site Update Solutions LLC v. Accor North America, Inc., et al.*, No. 10-cv-00151 (E.D. Tex. June 8, 2011); s*ee also Implicit Networks, Inc. v. Adobe Systems Incorporated, et. al.*, No. 08-cv-01080 (W.D. Wa. Mar. 19, 2009); *Collaborative Agreements, LLC v. Adobe Systems Incorporated et al.*, Case No. 14-cv-00356 (W.D. Tex. Aug. 21, 2015).

## II.     FACTUAL BACKGROUND

On May 12, 2016, Plaintiff Digital Verification filed suit against Adobe alleging that its Adobe Sign product, a digital signature solution, infringes U.S. Patent No. 9,054,860 ("the '860 patent").[1] The parties have not had an initial case management conference, and thus neither discovery nor any substantive action have yet taken place.

### A.     Mr. Rothschild, A Longtime Florida Resident, Incorporated Plaintiff Digital Verification Less Than 10 Days Before This Lawsuit

Mr. Leigh M. Rothschild, the Plaintiff Digital Verification's "Manager," "Organizer," and "Registered Agent," and the named inventor of the '860 patent, is long-term resident of Florida.  (Ex.[2] 1 (Certificate of Formation); Ex. 2[3]; Ex. 3 (April 8, 2016 Rothschild declaration in the District Court for the Southern District of Florida asserting that he is a "resident of the State of Florida," having "resided in Miami-Dade County for over 40 years.").)  Mr. Rothschild incorporated Digital Verification in Texas on May 3, 2016, and then a little over a week later, filed the instant litigation on May 12, 2016 without ownership in the '860 patent. (Ex. 1; D.I. 1.) Plaintiff executed a patent assignment four days after the instant suit was filed on May 16, 2016. (Ex. 4.) Other than Mr. Rothschild, Plaintiff does not appear to have any employees or conduct any business activities in the Eastern District of Texas or elsewhere.

Mr. Rothschild created Plaintiff Digital Verification having a principal place of business in this District using a cost-effective "virtual office solution" offered by Meridian Business

---

[1] On that same day, Plaintiff also filed suit in this District asserting patent infringement of the '860 Patent against DocuSign (*Digital Verification Systems, LLC v. DocuSign, Inc*., No. 2-16-cv-00499), Barracuda Networks (*Digital Verification Systems, LLC v. Barracuda Networks, Inc*., No. 2-16-cv-00496), and Citrix (*Digital Verification Systems, LLC v. Citrix Systems, Inc*., No. 2-16-cv-00497).

[2] "Ex." refers to the Exhibits to the Declaration of Ryan J. Casamiquela, filed concurrently herewith.

[3] The prosecution counsel for the '860 patent appears to reside in Florida.

Centers.  (Ex. 1 (listing principal place of business in Plano, Texas); Exs. 5, 6.)  Mr. Rothschild has extensive experience forming non-practicing entities ("NPEs"), having formed twenty-four active LLCs for purposes of asserting patent infringement lawsuits.  (Exs. 7, 8.)  All of his active LLCs in Texas have the same principal place of business of 1400 Preston Road, Suite 400, Plano, Texas 75093.  (Ex. 8.)  According to RPX's report on 2015 NPE Activity, Mr. Rothschild ranked No. 1 in 2015 as the top NPE, having sued 141 defendants last year.  (Ex. 9 at 6.)

> **B.     The Relevant Witnesses And Documents Regarding Adobe's Accused Product Are Located In Northern California**

Adobe is headquartered in the Northern District of California in San Jose, California. (Declaration of Jon Perera in Support of Defendant Adobe Systems Inc.'s Motion To Transfer Venue ("Perera Decl."), ¶ 2, filed concurrently herewith.)  Adobe's location in San Jose, California, together with its significant presence in San Francisco, California, form the core of Adobe's strategic center, and accounts for over 3,000 employees, including staff, engineers, product managers, and executives.  (*Id*.)

Adobe employs approximately 330 people who are directly or indirectly involved with Adobe Sign, the product accused of infringement in Plaintiff's Complaint.  (*Id.* ¶ 3.)  Of those, approximately 140 employees and contractors are located in San Francisco and San Jose, California.  (*Id*.)  Another 90 employees are located in India, and the remaining are broadly scattered throughout the world.  (*Id*.)  Besides one "partner success manager" employee who works remotely from Dallas, Texas with her team that is based in San Francisco, Adobe does not have any employees directly or indirectly involved with Adobe Sign located in Texas.  (*Id*.)  The source code comprising Adobe Sign is stored in computers physically located at Adobe's San Jose and San Francisco locations.  (*Id.* ¶ 5.)  Likewise, the technical documents, marketing materials, sales and financial information concerning Adobe Sign are located in San Jose and

4

San Francisco. (*Id.* ¶¶ 6-7.) The Adobe employees who have primary responsibility for product management and development decisions, and who have knowledge of the design and functionality of Adobe Sign, are located in the Northern District of California. Specifically, these witnesses include the Principal Scientist and original architect for Adobe Sign (Dan Foygel), the Vice President of Product Management for Adobe Sign (Jon Perera), the Director of Product Management for Adobe Sign (Mangesh Bhandarkar), Vice President, North America Sales for Adobe Sign (Brendan Caleca), Senior Product Marketing Manager for Adobe Sign (Saurabh Khurana), Director of Engineering for Adobe Sign (Tej Chadha), and Adobe's Finance and Accounting teams, which have responsibility for tracking financials for Adobe Sign. (*Id.* ¶ 4.)

In contrast to Adobe Sign's substantial ties to the Northern District of California, Adobe is not aware of any sources of proof concerning Adobe Sign within the Eastern District of Texas or within 100 miles of Marshall. (*Id.* ¶¶ 8, 10-13.) Adobe does not maintain any operations or facilities in the Eastern District of Texas or within 100 miles of Marshall that are involved in design, development, marketing or financial tracking of the Adobe Sign product. (*Id.* ¶ 9.)

      **C.**    **Third-Party Witnesses Reside In The Northern District Of California**

Specific relevant sources of proof from third-parties relating to prior art are also located in the Northern District of California. Here, the accused product (Adobe Sign) was originally developed by a company named EchoSign, Inc., which Adobe acquired in 2011. (*Id.* ¶ 14.) EchoSign, Inc. was based in Northern California, where it developed the EchoSign product—the legacy product to the accused Adobe Sign product—that predates the patent-in-suit. (*Id.*, Ex. 16 at 2.) At the time of the Adobe acquisition, the EchoSign product was used by more than three million users and had the digital signature functionality at issue in this case. (Exs. 10, 11.) EchoSign, Inc. founder and former CEO Mr. Jason Lemkin joined Adobe, along with his

5

EchoSign team, including Mr. Eran Aloni, the former Vice President of Products at EchoSign. (Exs. 11, 12.) Currently, however, neither Mr. Lemkin nor Mr. Aloni is employed by Adobe, although both appear to still be in Northern California. (Exs. 13, 14.) Both Mr. Lemkin and Mr. Aloni are likely to have relevant knowledge about the early development and disclosure of the original EchoSign product, which was publicly disclosed over a year before the January 2, 2008 filing date of the '860 patent. (*Id*.; Ex. 15, Ex. 16 at 2 (Mr. Lemkin explained that in late 2006, EchoSign "got a huge enterprise customer and 5,000 small customers".) Moreover, Carbon Five, a company located in San Francisco, California (Ex. 18), performed early development work on the EchoSign technology and would likely have evidence relating to the accused digital signature functionality that predates the '860 patent. (Ex. 17 (in 2006, "this collaborative development process allowed for a quick and easy transition from the Carbon Five development team to the EchoSign staff.").)

In addition, Plaintiff also asserts the same '860 patent against San Francisco-based DocuSign (Ex. 19), which will have prior art evidence and witnesses that reside in the Northern District of California. For example, DocuSign's Founder and current Chief Strategy Officer, Mr. Tom Gonser, is in San Francisco and has been working on DocuSign's strategic product management for the past thirteen years. (Exs. 20, 21.) DocuSign had products on the market in the prior art time frame that had the same digital signature functionality as claimed in the '860 patent. (Ex. 22 (DocuSign Data Sheet from 2006).) Access to these sources of prior art in the Northern District of California are vital to Adobe's invalidity defense because the accused digital signature functionality in the DocuSign products appears to have been on sale well before the January 2, 2008 filing of the '860 patent. (Ex. 23 (September 13, 2005 press release regarding DocuSign's digital signature service).)

6

### III. ARGUMENT

Section 1404(a) of 28 U.S.C. provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The inquiries under 28 U.S.C. § 1404(a) are, first, whether the suit could have been brought in the proposed transferee venue, and second, whether private and public interests demonstrate that the proposed transferee venue is clearly more convenient. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312, 315 (5th Cir. 2008). As explained below, the relevant factors favor transferring this action to the Northern District of California.

#### A. Plaintiff Could Have Filed This Case In The Northern District Of California

The threshold inquiry is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (Fed. Cir. 2004). A case could have been brought in the transferee court if that court has subject matter jurisdiction over the claims and personal jurisdiction over the defendant, and if it is a proper venue for the case. *Id*. Here, the Northern District of California has subject matter jurisdiction over Plaintiff's patent claims under 28 U.S.C. §§ 1331 and 1338(a) and also has personal jurisdiction over Adobe with proper venue because, as discussed above, Adobe regularly conducts business, maintains its headquarters, and employs the bulk of its personnel in that District. (Perera Decl. ¶ 2; 28 U.S.C. § 1391(b).)

#### B. The Private Interest Factors Weigh In Favor Of A Transfer To The Northern District Of California

Under Fifth Circuit law, the Court must weigh four private interest factors in deciding transfer: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses;

7

and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen*, 545 F.3d at 315. These factors favor a transfer.

### 1. Access To Sources Of Proof Favors The Northern District Of California

Transfer is warranted where, like here, the sources of proof of alleged infringement are located in the transferee forum. *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The bulk of the relevant evidence in this action will come from Adobe. *See Ingeniador LLC v. Adobe Systems Incorporated*, No. 12-cv-0805-JRG, 2014 WL 105106, at *2 (E.D. Tex. Jan. 10, 2014) (granting motion to transfer and noting that "[t]his being a patent case, it is likely that the bulk of the relevant evidence in this action will come from Adobe"), citing *In re Genentech*, 566 F.3d 1388, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."). The Adobe employees that have the relevant knowledge and primary responsibility for Adobe Sign are located in San Jose or San Francisco. (Perera Decl. ¶ 4.) Besides one employee who works remotely in Dallas (whose team is actually in San Francisco), Adobe does not have any employees directly or indirectly involved with Adobe Sign located in the State of Texas. (*Id.* ¶ 3.) The Adobe documents relevant to this case are located in the Northern District of California, including the Adobe Sign source code. (*See supra* Section II.B; Perera Decl. ¶¶ 5-7; *see In re Genentech*, 566 F.3d at 1345 ("the place where the defendant's documents are kept weighs in favor of transfer to that location.").) Adobe is not aware of any Adobe documents related to Adobe Sign within the Eastern District of Texas or within 100 miles of the Marshall, Texas. (Perera Decl. ¶¶ 10-13.)

In contrast to the significant connections to the Northern District of California, to Adobe's knowledge, there are no Plaintiff or third-party witnesses or evidence located anywhere in this District. (Perera Decl. ¶¶ 8, 9, 13; Ex. 3.) Plaintiff was formed one week before the filing

8

of this case for what appears to be the sole purpose of asserting the '860 patent. (Ex. 1.) The only member of Plaintiff is named inventor Mr. Rothschild, who recently admitted in federal court that he is a resident of Florida, having resided there for the past 40 years. (Ex. 3.)[4]

In sum, transfer is warranted because the witnesses and evidence are located in the Northern District of California, and no known witnesses or evidence are located within the Eastern District of Texas. *See In re Nintendo Co.*, 589 F.3d at 1198 ("This court has held and holds again in this instance that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the court should grant a motion to transfer."); *see also Digital Reg of Texas*, No. 11-cv-00305, Dkt. No. 160, at 4 (E.D. Tex. Mar. 28, 2012) (granting Adobe's motion to transfer after noting that a "substantial majority of the relevant evidence is located in or nearer to the Northern District of California" and "this factor weighs strongly in favor of transfer").

### 2. Availability Of Compulsory Process Favors Transfer To The Northern District Of California

A venue is favored when it has subpoena power to compel attendance at deposition and at trial non-party witnesses. *See In re Genentech Inc.*, 566 F.3d at 1345. The former EchoSign founder and CEO, Mr. Jason Lemkin resides in the Northern District of California. (Ex. 13.) Mr. Lemkin would likely have knowledge pertaining to Adobe's accused technology inherited from EchoSign, as well as the public use and disclosure of EchoSign that occurred over a year before the January 2, 2008 filing date of the '860 patent. (Exs. 15, 16; *supra* Section II.C.)

---

[4] Generally speaking, an LLC, such as Plaintiff Digital Verification Systems, LLC, resides where it has a principal place of business or where its members reside. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("an LLC is a citizen of every state of which its owners/members are citizens."). Here, Plaintiff's address is a mail stop, suggesting that it actually has no principal place of business. Thus, Plaintiff is likely only a citizen of Florida, which is the state of residence of Mr. Rothschild. For this reason, aside from the filing of the lawsuit, there appears to be no cognizable tie to this District on either side of the ledger.

Similarly, Mr. Eran Aloni, the former Vice President of Products at EchoSign, as well as the Carbon Five company that worked on the early EchoSign product, are also located in Northern California and likely have knowledge regarding the public use and disclosure of prior art versions of EchoSign. (Exs. 12, 14, 17.) Only a district court in the Northern District of California has subpoena power over Mr. Lemkin, Mr. Aloni, and Carbon Five. These individuals are not employed by Adobe, have not agreed to help Adobe in this case, and are not likely to be willing or able to travel to Marshall, Texas when needed to testify before the jury. While this Court lacks the ability to subpoena these witnesses for trial, each of the individuals resides within the Northern District of California and their testimony there may be ensured. *See* Fed. R. Civ. P. 45(c)(1)(A); Fed. R. Civ. P. 45(d)(3). Similarly, and as discussed, Adobe may likely require the subpoena power of the Court to secure the prior art related testimony of its competitor DocuSign, which is unlikely to voluntarily offer up its employees' time to give live testimony to assist Adobe. For example, Mr. Tom Gonser, DocuSign's Founder and current Chief Strategy Officer, should have specific knowledge on the prior art versions of the accused DocuSign product that were on sale over a year before the filing date of the '860 patent. (Exs. 21, 23; *supra* Section II.C.) Conversely, Adobe is not aware of any potential non-party witnesses under the subpoena power of this Court. For the above reasons, this factor weighs in favor of transfer.

### 3. Cost Of Attendance For Willing Witnesses Favors The Northern District Of California

A transfer to the Northern District of California would also substantially minimize the cost and burden of attendance at trial for both party and nonparty witnesses, which is "one of the most important factors." *GeoTag, Inc. v. Aromatique, Inc. et al.*, No. 2:10-cv-0570, 2013 WL 8349856 at *4 (E.D. Tex. Jan. 14, 2013); *see also Ingeniador*, 2014 WL 105106, at *3 ("The

10

most important factor in this Court's analysis of this case is the cost of attendance for willing witnesses."). This factor weighs the travel burden and disruption to work and family of those who must attend trial. *See In re Nintendo Co.*, 589 F.3d at 1198-99. Under the Fifth Circuit's "100 mile" rule, the "factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled" when the distance between the current venue and proposed transferee venue is more than 100 miles. *Volkswagen*, 371 F.3d at 204-05; *see also In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (ordering transfer where a "substantial number of party witnesses" reside in or close to the suggested more convenient forum). The distance between the court in the Northern District of California (San Jose Division) and this Court is approximately 1,840 miles. (Ex. 24.) Adobe witnesses and the non-party witnesses Mr. Lemkin, Mr. Aloni, Mr. Gonser, and Carbon Five, all of which reside in the Northern District of California, would need to travel significantly to appear in this Court. (*Id.*) Those witnesses would also unnecessarily incur the cost of plane tickets, rental cars, and hotel rooms, which would be unnecessary if this case were transferred. *See In re Genentech Inc.*, 566 F.3d at 1344 (mandating transfer where there existed "a substantial number of witnesses residing within the transferee venue who would be unnecessarily inconvenienced by having to travel away from home to testify in the Eastern District of Texas"); *see also Ingeniador*, 2014 WL 105106, at *3 ("Witnesses residing in San Francisco or San Jose would be forced to travel more than 1,500 miles to attend trial in this Court. If the case were tried in the San Jose division of the Northern District of California, these witnesses would need to travel fewer than 100 miles."). By contrast, Mr. Rothschild, were he to testify, would have to travel over 1000 miles regardless of whether this matter was in Texas or California, because he resides in Florida. For these reasons, this factor—"one of the most important"—weighs heavily in Adobe's favor.

11

### 4. All Other Concerns Weigh In Favor Of Transfer

The remaining considerations also favor transfer to the Northern District of California. First, this case is still in its infancy: no case management conference has been scheduled; no scheduling order has been issued; and no discovery has taken place. *See, e.g.*, *Internet Machs. LLC v. Alienware Corp.*, No. 10-cv-023, 2011 WL 2292961, at *8 (E.D. Tex. Jun 7, 2011) (recognizing transfer is more convenient when request comes before initial disclosures or the entry of a scheduling order).

Second, the pendency of other related cases in this District does not counsel against transfer. There is little judicial economy here when Adobe does not share the same accused products or accused technology with any other defendant in this case. As this Court has emphasized, filing multiple cases against separate defendants in a single district cannot be used as a means to establish venue. *GeoTag*, 2013 WL 8349856, at *5 ("The Court will not permit the existence of separately filed cases to sway its transfer analysis. Otherwise, a plaintiff could manipulate venue by serially filing cases within a single district.") (citing Leahy-Smith America Invents Act, 35 U.S.C. § 299 (2011)). Instead, courts have indicated that motions to transfer venue are to be decided based on the situation which existed when the suit was instituted. *See Hoffman v. Blaski*, 363 U.S. 335, 343 (1960); *Nobel Biz, Inc. v. Five9, Inc.*, No. 6:12-cv-00243-MHS, Dkt. No. 52, at 10 (E.D. Tex. Mar. 28, 2013) (Schneider, J.) (Ex. 25.) At the time of filing here, the Court had no familiarity with the patent-in-suit or the accused products. Absent a demonstration that the Court has experience with or is familiar with the patents in this case, the fact that there are overlapping cases does not equate to judicial economy. *See Adaptix Inc. v. Motorola Mobility LLC*, No. 6:12-cv-00016-MHS, Dkt. No. 124, at 13-14 (E.D. Tex. Mar. 28, 2013) (Schneider, J.) (Ex. 26.)

### C. The Public Interest Factors Weigh In Favor Of A Transfer Or Are Neutral

The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Volkswagen*, 545 F.3d at 315 (citation omitted). All of these factors weigh in favor of transfer or are neutral.

### 1. Administrative Difficulties Flowing From Court Congestion Do Not Weigh Against Transfer

The Northern District of California and this District both have expeditious dockets, and the time to reach trial in both districts is approximately the same. *See* Ex. 27 (2016 Patent Litigation Study, PricewaterhouseCoopers), at 15 (median time to trial in the Eastern District of Texas is 2.3 years and 2.8 years in the Northern District of California). And "when, as here, several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347. Based on the above, this "most speculative" of factors (as a court in this district has called it) is neutral in this case. *Orinda Intellectual Props. USA Holding Grp., Inc. v. Sony Corp.*, No. 2:08-cv-323, 2009 WL 3261932, at *3 (E.D. Tex. Sep. 29, 2009).

### 2. Local Interest Favors The Northern District Of California

As the Federal Circuit has recognized, where "the [transferee District] has a meaningful local interest in adjudicating the dispute and no meaningful connection exists with the Eastern District of Texas, this factor also favors transfer." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Such is the case here. The Northern District of California has an undisputedly high interest in adjudicating this dispute, as Adobe was founded and is headquartered in San Jose, California, maintains its principal place of business in San Jose, and is a long-time Northern California technology company. (Perera Decl. ¶ 2.) By contrast, this

District has no meaningful interest in adjudicating this case because there is a lack of any material connection to this District. *See In re Nintendo*, 589 F.3d at 1198 (ruling in such circumstances the local interest "clearly favors transfer."). Indeed, the single member of Plaintiff, Mr. Rothschild, resides in Florida, not Texas. (Ex. 3.) And any assertion that Adobe's accused product is capable of serving customers in this District would apply equally to any district across the country and thus should be disregarded as a local interest. *See, e.g.*, *Orinda*, 2009 WL 3261932, at *3 ("Interests that could apply virtually to any judicial district or division in the United States such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests.") (citations omitted). The Fifth Circuit has recognized that claiming this District has a local interest in resolving a dispute merely because a product is available in the district—where the product is available nationwide—"eviscerates the public interest that this factor attempts to capture." *In re Volkswagen*, 545 F.3d at 318. Because the Northern District of California has a local interest in this case—and this District has none—this factor favors a transfer.

### 3. Familiarity With Patent Law And Avoiding Potential Conflicts Of Law Are Neutral Factors

The third and fourth public interest factors are both neutral here. Both this District and the Northern District of California are equipped to adjudicate patent law issues. For instance, both districts have local rules to streamline patent cases. Also, a transfer does not present a potential for conflict of laws, because federal patent law will apply, regardless of where this case is heard. *See Orinda*, 2009 WL 3261932 at *4.

## IV. CONCLUSION

For the foregoing reasons, Adobe respectfully requests that this Court grant the requested transfer to the Northern District of California.

14

Dated:  August 5, 2016	Respectfully Submitted,


By: */s/ Michael A. Berta, with permission by Michael E. Jones*
Michael A. Berta
Ryan J. Casamiquela
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Tel:    415-471-3100
Fax:   415-471-3400
michael.berta@aporter.com
ryan.casamiquela@aporter.com

Michael E. Jones
SBN: 10929400
POTTER MINTON, PC
110 North College, Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-593-0846
mikejones@potterminton.com

**ATTORNEYS FOR DEFENDANT ADOBE SYSTEMS INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 5, 2016.

*/s/ Michael E. Jones*
Michael E. Jones

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendant has complied with the meet and confer requirement in Local Rule CV-7(h).  This motion is opposed.  The personal conference required by Local Rule CV-7(h) was conducted on August 5, 2016 via telephone conference with the following participants: Matthew P. Harper of Cunningham Swaim for the Plaintiff Digital Verification Systems, LLC and Ryan J. Casamiquela of Arnold & Porter LLP for the Defendant Adobe Systems Inc.  No agreement could be reached because the parties disagreed on the merits of the motion to transfer venue.  Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ Ryan J. Casamiquela*
Ryan J. Casamiquela

*/s/ Michael E. Jones*
Michael E. Jones